IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT | § | |
| LLOYD'S OF LONDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. H-06-3361 |
| | § | |
| CORPORATE PINES REALTY | § | |
| CORP., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

Plaintiff, Certain Underwriters at Lloyd's of London ("Underwriters"), issued to Defendant Corporate Pines Realty Corporation ("Corporate Pines") a commercial property insurance policy ("Policy") covering four office buildings in Houston, Texas. In April 2006, Corporate Pines claimed damages to several of its office buildings and sought reimbursement under the Policy. Underwriters denied that the losses were covered under the Policy.

Underwriters filed this declaratory action on October 24, 2006.[1] Underwriters asks the court to declare that it has no duty to indemnify Corporate Pines for any damage to its property because: (1) the theft exclusion to the vandalism provision of the Policy precludes coverage; (2) Corporate Pines did not comply with the Policy's coinsurance requirement; (3) Corporate Pines failed to cooperate with the claim investigation; and (4) Corporate Pines was not entitled to lost business income because its loss was not a

---

[1]   Complaint, Docket Entry No. 1, p. 2.

"covered loss" under the Policy.[2] Corporate Pines has counterclaimed for: (1) breach of contract for failure to pay its vandalism losses; (2) violation of Article 21.21 of the Texas Insurance Code for refusing to advance money for repairs;[3] (3) violation of Article 21.55 of the Texas Insurance Code for unfair and untimely treatment of its claim;[4] and (4) breach of the common law duty of good faith and fair dealing.[5] In addition to damages for violations of the Texas Insurance Code and breach of the duty of good faith and fair dealing, Corporate Pines requests relief in the form of building repairs, lost business income, and attorney's fees.[6]

The court first addresses subject matter jurisdiction. On the morning of trial, Corporate Pines moved to dismiss this action, claiming that there was less than $75,000 in controversy. Federal jurisdiction is determined at the time a complaint is filed. Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570 (2004).

This lawsuit was filed on October 24, 2006. On July 28, 2006,

---

[2]   See id. at pp. 3-7.  The court has precluded introduction of any evidence of lost business income by Defendant as a sanction for discovery abuses.

[3]   Article 21.21 of the Texas Insurance Code was repealed and recodified effective April 1, 2005.  It is now Sections 541.051-.061 of the Texas Insurance Code.

[4]   Article 21.55 of the Texas Insurance Code was repealed and recodified effective April 1, 2005.  It is now Sections 542.051-.061 of the Texas Insurance Code.

[5]   See Answer and Counterclaim, Docket Entry No. 15, p. 5-6.

[6]   Id.

2

Corporate Pines sent Underwriters a demand for $88,471.94, the amount it claimed was owing under the policy.[7]   A week after the suit was filed, Corporate Pines demanded $111,643.94 to settle the lawsuit.[8]  In January 2007, Corporate Pines increased its demand to $124,835.94.[9]  In light of the evidence that Corporate Pines' pre-suit demand exceeded $75,000, the court finds that it had subject matter jurisdiction pursuant to 28 U.S.C. § 1332.   Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket Entry No. 89) is **DENIED.**

Also, on the morning of trial, Corporate Pines orally moved to withdraw its consent to proceed before the undersigned pursuant to 28 U.S.C. § 636(c).[10]  Several weeks earlier, on October 10, 2008, the parties appeared before the Honorable Sim Lake at docket call. In lieu of receiving an immediate trial setting from Judge Lake, the parties executed a consent form, agreeing to try the case before the undersigned on November 3, 2008.[11]  In arguing the motion on November 3rd, Corporate Pines' counsel acknowledged that it had

---

[7]     See Defendant's Trial Exhibit 16, letter dated July 28, 2006, from Corporate Pines to Sina Alvarado.

[8]     See Defendant's Trial Exhibit 7, letter dated November 1, 2006, from Corporate Pines to Sina Alvarado.

[9]     See Defendant's Trial Exhibit 8, letter dated January 26, 2007, from Corporate Pines to Sina Alvarado.

[10]    The docket sheet noticing information reflects that the written motion was electronically filed on November 3, 2008, at 6:08 p.m.  See Docket Entry No. 90.  It raised the same ground argued by counsel earlier that day.

[11]    See Minute Entry Order, Docket Entry No. 84; Consent to Proceed Before United States Magistrate Judge Nancy K. Johnson, Docket Entry No. 85.

3

no absolute right to withdraw a consent to proceed before a magistrate judge but stated that his client now objected to the consent.

A consent to proceed may be withdrawn upon motion by a party only for good cause. Knighten v. John, 115 Fed. App'x 669, 670 (5th Cir. 2004)(citing Carter v. Sea Land Svcs., Inc., 816 F.2d 1018, 1021 (5th Cir. 1987)). In Carter, the court listed several factors to be considered in determining good cause. Those factors were undue delay, inconvenience to the court and witnesses, prejudice to the parties, whether the movant was acting *pro se,* whether the consent was voluntary and uncoerced, whether the motion was made in good faith or was dilatory and contrived, and whether the interests of justice would best be served by holding a party to his consent. Carter, 816 F.2d at 1021 (internal citations omitted).

In the present case, Corporate Pines presented the court with no reason for withdrawal of the consent other than it no longer consents. In light of the timing of this motion, the court finds that the motion was untimely, prejudicial to Underwriters and its witnesses who were present and ready for trial, and dilatory in nature. Defendant's motion to withdraw the consent (Docket Entry No. 90) is **DENIED**.

After hearing the evidence adduced at trial, the court makes the following findings of fact and conclusions of law.

1. Corporate Pines owns and rents the office buildings at

6610, 6620, 6630 and 6640 Harwin Drive, in Houston, Texas. Corporate Pines is owned by Yigal Bosch ("Bosch").

2.  Corporate Pines was insured under Certificate No. IPSI6274 ("the Policy"), issued by Underwriters, with effective dates of May 31, 2005, to May 31, 2006.[12]  It was a "basic form" policy, meaning that it only provided coverage for those causes of loss expressly listed on the policy.[13]  Relevant to the present dispute, the Policy did not cover theft but covered vandalism losses, defined as the "willful and malicious damage to, or destruction of, the described property."  Notably, the Policy did not cover vandalism damage "caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars."[14]

3.  The Policy contained a $5,000 per occurrence deductible.[15]

4.  The Policy provided no coverage for vandalism, theft, attempted theft, glass breakage or water damage if the building had been vacant for more than sixty consecutive days.[16]

5.  The Policy required that losses be paid on an actual cash value, not replacement value.[17]

---

[12]    Defendant's Exhibit 1, The Policy.

[13]    The Policy was not an "all risks" policy.

[14]    Defendant's Exhibit 1, p. 26 (unnumbered).

[15]    Id. at p. 6. (unnumbered).

[16]    Id. at pp. 16-17 (unnumbered).

[17]    Id. at p. 16 (unnumbered).

5

6.    The Policy required that Corporate Pines insure its property for a minimum of eighty percent of its value and, if it did not, its coverage would be reduced proportionately.  Corporate Pines declared the value of its property to be $750,000.[18]

7.    The Policy required Corporate Pines to promptly give notice of any loss, cooperate in the investigation of any claim, file a police report regarding any loss if the claim involved theft or damage to property and provide a description of how, when, and where the loss or damage occurred.[19]

8.  The Policy provided that it became void if Corporate Pines committed a fraud or misrepresentation, or concealed a material fact in connection with making a claim under the Policy.[20]

9.  Cora Lee Edwards ("Edwards"), manager of the Corporate Pines property, testified that on April 7, 2006, a maintenance man for the property discovered that a window had been broken at the 6640 building, providing access into the building.  Edwards found that the intruder had entered the building, forced open the locked roof access door, and pried open the outer casings of the twelve air conditioning units on the roof.  Edwards also testified that the intruder spread paint around the interior of the building and wrote "Catch me if you can" on the walls.  However, no paint or

---

[18]    Id. at pp. 17-19 (unnumbered).

[19]    Id. at pp. 15-16, 21, 35-36 (unnumbered).

[20]    Id. at p. 21 (unnumbered).

6

graffiti was seen in pictures taken by the insurance adjuster ten days later. Edwards stated that she observed that water lines had been opened and that water was on the floor in the 6640 building. She stated that she reported this damage to Bosch but did not report this damage to the police when they took the report about the damaged air conditioning units.

10. Edwards testified that an intruder wrote "Catch me if you can" on walls in the 6630 building, but that she did not report this to police either. Edwards conceded that there was no apparent damage to the exterior glass or exterior doors of the 6630 building after the vandalism was discovered. Edwards admitted on cross-examination that she was not aware of any vandalism damage to the 6620 building in the first half of 2006, contradicting bosch's testimony that 6620 Harwin was damaged at the same time as the other buildings. The court finds Edwards' testimony concerning the interior vandalism to the 6630 and 6640 buildings to be not credible in light of her failure to mention it to the police and her evasive answers and unsure demeanor on the witness stand.

11. On April 7, 2006, Corporate Pines made a report to the Houston Police Department regarding the damaged air conditioning units at 6640 Harwin. The police report stated that unknown suspects broke into the building at 6640 Harwin, climbed onto the roof and vandalized all the air conditioning units, stealing the

copper coils out of each unit.[21]  The 6640 building was described as "vacant."  Damage was estimated at $15,000.  Edwards testified that the police officer based the report on her information and did not view the damage to the air conditioning units for himself.

12.  Carson Wallen ("Wallen") testified that he worked for HVAC Consultants, an air conditioning contractor.  Wallen estimated that sixty percent of his work was for Corporate Pines.  He was contacted by Bosch's office and asked to assess the damage to the air conditioning units at 6640 Harwin.  Wallen stated that he went to the property on the same day as he received the call and observed that all twelve units had been broken into and the copper coils stolen.

13.  On April 10, 2006, Wallen estimated that the replacement of the twelve damaged air conditioning units would cost $39,931.97.[22]  Wallen denied that his helper, Mark Goldstein, removed copper coils from the air conditioning units at any time, as claimed by Bosch at trial.

14.  On April 7, 2006, Bosch called Corporate Pines' insurance agent, Liz Comiskey, to report the April 6, 2006, property damage. The ACORD form prepared by Comiskey described the damage/loss as

---

[21]    Plaintiff's Ex. 3, Houston Police Reports for the Corporate Pines property for the period January 1, 2006, through May 31, 2006.  In another section of the police report, the officer states that a total of eleven units were vandalized.

[22]    Defendant's Exhibit 4, HVAC Estimate.

"theft/stolen air condition units" and valued the loss at $40,000.[23] There was no mention of interior damage to any building.

15.   Bosch testified that he believed that all the air conditioning units were vandalized on either April 5, 6, or 7, 2006, by a homeless person and that three coils were stolen at that time. Bosch speculated that after the vandalism, two copper coils were stolen on the following Friday, and the remaining coils stolen between April 8 and April 15, 2006.  He testified that he saw someone throw a coil off the roof on a Saturday, either April 8, or April 15, 2006.  Bosch testified that Wallen's helper stole the remaining coils when he assessed the vandalism damage and that Wallen's helper took the remaining three coils with his permission. This contradiction was never explained in his testimony.  Bosch denied telling his insurance agent that any property was stolen on April 6, 2006, and claimed that he reported that the units were "gone" or "lost."  Bosch also denied that all twelve copper coils were missing when Wallen inspected the units on April 7, 2006.

16.   In another contradictory account of the theft of copper coils, Bosch filed a police report on April 16, 2006.  In the report, Bosch claimed that on April 16th he found a broken window at the 6640 building and, after investigating, determined that the roof air conditioning units had had their copper coils stolen. Bosch told police that he had walked the property the night before

---

[23]   Defendant's Exhibit 2, "Property Loss Notice."

9

and had noted no damage.

17.  Bosch's testimony concerning the vandalism/theft of copper tubing was internally inconsistent, speculative, and in no way credible.  The court finds that the air conditioning units were damaged and the copper coils stolen sometime between the close of business on April 6, 2006, and the morning of April 7, 2006.

18.  Sina Alvarado ("Alvarado") is a staff adjuster with Paul White & Company, an independent insurance adjusting company. Alvarado has worked as a commercial adjuster since 1996 and is a licensed adjuster in the State of Texas.  She has a Charter Property Casualty Underwriter certification.

19.  Alvarado was first notified of the Corporate Pines claim on April 10, 2006, when her employer received an ACORD form and limited policy information from a claims administrator for Plaintiff.  The ACORD form provided the name of the insured, the date and location of the loss, a brief description of the claimed loss, and who to contact about the loss.  The form described the loss as a theft of air conditioning units that occurred on April 6, 2006, and was reported to the insurance agent on April 7, 2006.

20.  On April 11, 2006, Alvarado attempted to contact Bosch concerning the loss.  Bosch returned her call on April 14, 2006. In that conversation, Bosch stated that the insured property consisted of four buildings but the claim only involved one building, 6640 Harwin.  Bosch related that someone had broken a

window to gain access to the building, had broken open the roof hatch and had disassembled all the air conditioning units on the roof in order to steal the copper coils.  Bosch did not mention any vandalism to the interior of either the 6630 or 6640 building.

21.  Alvarado testified that on April 11, 2006, Bosch informed her that the 6640 building had a tenant who held party events in the building and that the tenant was able to relocate some of the events elsewhere while repairs were in progress.  Bosch also stated that the building was undergoing paint and carpet remodeling and that the damage to the air conditioning units resulted in an accelerated renovation schedule.  Bosch told her that he had obtained an estimate to replace the air conditioning units. Alvarado made arrangements with the property manager, Edwards, to visit the property and view the loss on April 17, 2006.

22.  On April 17, 2006, Alvarado met Edwards at the 6610 building and had a brief conversation concerning the damage to the air conditioning units.   Edwards told her that all the air conditioning units at the 6640 building had been destroyed and that a maintenance man would show her the damage.  Alvarado walked to the 6640 building but found no maintenance man as promised by Edwards.  Alvarado found a security guard, who showed Alvarado the broken windows, some of which had been boarded up.  He then took her inside the building.  Alvarado testified that she could not recall seeing any damage to the mechanical room door, interior

floors or walls.  Alvarado testified that if she had seen such damage, she would have made a note of it.  She entered the small mechanical room with the guard and climbed the ladder to the roof. There, she saw that the outer coverings of all twelve air conditioning units had been forcibly prised open and the copper coils had been removed from each unit.  Based on her experience, the damage to the outer casings was consistent with damage inflicted in order to steal the copper coils inside.  Alvarado also observed that the roof appeared to be in a deteriorated condition, based on evidence of ponding.

23.  Alvarado generally viewed the building's interior.  She stated that the building did not appear to be leased and was not in a condition to have a tenant.  The ceiling tiles were water-stained and some were missing all together.  The carpet was rolled up and had ragged edges, indicating that it was used carpet.  Her impression was that the ceiling had leaked in the past because of water stains appearing on top of water stains on the ceiling tiles, but was not presently leaking as the floor was dry and the building did not smell damp or musty.  Pictures taken by Alvarado on April 17, 2006, showed curled linoleum tiles on a portion of the floor, water-damaged wallboard, missing baseboards, boards and other debris strewn about the floor or leaning against the walls, and a general lack of maintenance and housekeeping.[24]  None of the damage

---

[24]   Defendant's Exhibit 14, photos of 6640 Harwin.

appeared to be from vandalism.  Alvarado testified that she had seen similarly-damaged linoleum tiles in the presence of continual roof leaks over a period of weeks or months in her work as an adjustor.  She did not attribute the damaged flooring to vandalism of the air conditioning units.  Alvarado testified that she did not see any graffiti on the walls at 6640 Harwin.

24.  After viewing the damage to the air conditioning units, Alvarado returned to the 6610 building and spoke with Edwards. Edwards did not mention any vandalism damage to the interior of 6640 or 6630 Harwin.  Alvarado asked Edwards for a copy of the lease for the 6640 building.  Alvarado testified that Edwards looked for the lease but could not locate it.  A signed copy of the lease was important to Alvarado because both Edwards and Bosch told her that the 6640 building had a tenant but, after viewing the property, Alvarado did not believe the building was leased. Alvarado testified that if the 6640 building was not leased, the policy did not cover vandalism.

25.  In a followup conversation with Bosch on April 21, 2006, Alvarado expressed her opinion that the damage to the air conditioning units was not a covered loss under the Policy because the units were damaged in the course of a theft and the Policy did not cover theft.

26.  On April 27, 2006, Alvarado returned Bosch's call from the day before.  Bosch stated that he wanted to settle the claim as

quickly as possible because of the on-going loss of rent income. Alvarado responded that the policy did not provide theft coverage and the claim would have to be submitted to Underwriters for its review.  Bosch told Alvarado that he viewed the vandalism and theft as separate incidents, but failed to provide any detail on the dates of these alleged separate events.  Bosch told Alvarado that the person who had vandalized the air conditioning units had also vandalized the interiors of both the 6640 and 6630 buildings and, if he made a vandalism claim under the policy, the damages would exceed $100,000.  He invited Alvarado to verify this new vandalism claim with Edwards.  Edwards later confirmed that 6640 and 6630 Harwin had been vandalized.

27.  Despite Bosch's representation to Alvarado that the interiors of the 6630 and 6640 buildings had been vandalized, Corporate Pines failed to notify its insurance agent of the alleged interior damage, and no ACORD form was ever prepared by Corporate Pines's insurance agent concerning that loss.

28.  On May 1, 2006, Bosch faxed Alvarado a letter outlining an additional $43,641.00 in damages sought under the Policy.[25] Referencing the 6640 building, Bosch claimed a loss of rent income for April and May, 2006 in the amount of $13,691.60, broken windows in the amount of $3,450, and broken ceiling tiles, damaged carpet

---

[25]     Defendant's Exhibit 10, letter dated May 1, 2006, from Corporate Pines to Alvarado.

and flooring in the amount of $10,500.[26]   Referencing the 6630 building, Bosch claimed $4,000 in repairs for a vandalized mechanical room, broken door, damaged walls and ceilings, and ripped electrical outlets and telephone lines.[27]  Finally, and for the first time, Bosch claimed that the 6620 building had sustained damages in the amount of $12,000 for a vandalized mechanical room, broken door, door frame, shelves, walls, ceiling tiles, and computer wires for alarm system and door control.[28]

29.  Missing from the May 1st letter was any photo of the damage or detail concerning how the costs had been calculated.  The letter also failed to mention when the three buildings had been vandalized, an important factor in determining how many deductible events occurred under the Policy.  As an example, Alvarado testified that the $4,000 claimed for the 6630 building was less than the Policy's $5,000 deductible per occurrence.  Also, the Policy did not cover broken glass.

30.  On May 5, 2006, Alvarado responded to Corporate Pines' claim for additional damages by requesting documentation of the new claim, including dates of the vandalism and invoices or repair estimates of the damages claimed.[29]  Alvarado again requested a copy

---

[26]   Id.

[27]   Id.

[28]   Id.

[29]   Defendant's Exhibit 17, letter dated May 5, 2006, from Alvarado to Corporate Pines.

15

of the signed lease for the 6640 building.

31.  Alvarado obtained police reports on the Corporate Pines property from January 1, 2006, through May 31, 2006.  She found that Corporate Pines made no police report concerning the interior vandalism claims for 6620, 6630 or 6640 Harwin for that time period.

32.  On July 28, 2006, Corporate Pines increased its demand to $88,471.94.[30]  The demand included $39,931.97 for replacement of air conditioning units at 6640 Harwin, lost rent income of $26,000 for 6640 Harwin, and $22,539.97 for interior vandalism damage to 6620, 6630 and 6640 Harwin.  The $22,539.97 was based on an estimate from Tuttle Construction Co.[31]  However, the Tuttle estimate only covered repairs to 6630 and 6640 Harwin, and did not mention 6620 Harwin, as referenced in Bosch's letter.

33.  In fact, the estimate claimed $22,539.97 for interior damage to 6640 Harwin.  Included in that estimate were repairs to vinyl floor tile, repairs to the ceiling grid, painting the ceiling grid, installing a new ceiling and replacing broken glass. Referencing the 6630 building, the Tuttle estimate claimed an additional $8,239.22 for repairs to the drop ceiling grid, cleaning and painting the drop ceiling grid, repairing sheetrock, and preparing and painting walls.  In light of the square footage of

---

[30]     Defendant's Exhibit 16, letter dated July 28, 2006, from Corporate Pines to Alvarado.

[31]     Defendant's Exhibit 11, Tuttle estimate.

the repairs mentioned in the estimate, the repairs appeared to be for routine upkeep on the property, and not for vandalism.  And, while Corporate Pines claimed that the vandalism included graffiti, it again failed to submit pictures of graffiti or any evidence that resembled damage due to vandalism at any building.

34.  On August 8, 2006, Alvarado wrote a letter to Bosch acknowledging his letter of July 28th.  Alvarado told him that the information he submitted on July 28, 2006, was being forwarded to Underwriters for review.  Alvarado related that she needed additional information regarding the interior vandalism damage first claimed on May 1, 2006.  She again asked for the date of loss for each incident, a copy of the signed lease for 6640 Harwin, and contact information for the tenant.[32]  Corporate Pines did not respond to this request.  Underwriters filed the present action on October 24, 2006.

35.  On November 1, 2006, Corporate Pines increased its demand on Alvarado for $111,643.94.[33]  The demand included $39,931.97 for replacement of the air conditioning units at 6640 Harwin, lost rent income of $46,172.00, interior vandalism damage of $22,539.97 and $3,000 for legal fees and expenses.[34]

---

[32]    Defendant's Exhibit 12, letter dated August 8, 2006, from Alvarado to Corporate Pines.

[33]    Defendant's Exhibit 7, letter dated November 1, 2006, from Corporate Pines to Alvarado.

[34]    Id.

17

36.   On January 26, 2007, Corporate Pines made a demand on Alvarado for $124,835.94 under the Policy.[35]   The demand included $39,931.97 for replacement of the air conditioning units at 6640 Harwin, lost rent income in the amount of $59,364.00, interior vandalism damage in the amount of $22,539.97 and legal fees in the amount of $3,000.   On April 5, 2007, Corporate Pines increased its demand to $139,027.94.[36]

37.   At trial, David Dominy, a member of the Appraisal Institute, testified that at the time of the loss, the value of the Corporate Pines property, excluding the land value, was $2,100,000. Bosch testified that he valued the property at $1,800,000.   As it is undisputed that Bosch insured the buildings for $750,000, far below the eighty-percent coinsurance figure required by the Policy, any recovery by Corporate Pines must be reduced by the percentage of the under-insurance.   Following the Policy's calculation, if the structures were worth $2,100,000, then Underwriters would be required to cover only 44.6 percent of the loss.   If the court found that the structures were worth $1,800,000, Underwriters would be required to cover 52.1 percent of the loss.

38.   The court has listened to the rationale and methods used by Dominy to place a value on the Corporate Pines property and to

---

[35]     Defendant's Exhibit 8, letter dated January 26, 2007, to Alvarado from Corporate Pines.

[36]     Defendant's Exhibit 9, letter dated April 5, 2007, to Alvarado from Corporate Pines.

18

verify that value by comparisons to similar properties in the area and by calculating a depreciated value of replacement cost.   In contrast, the value testified to by Bosch is unsupported by anything other than his opinion.   The court credits Dominy's cash value of the buildings as $2,100,000.   The court finds that Corporate Pines underinsured its property and Underwriters would be liable for only 44.6 percent of any amount found to be owing under the Policy.

39.   During the claim investigation, Corporate Pines failed to turn over an executed copy of lease supporting its claim for lost rent income for 6640 Harwin.   After the suit was filed, Underwriters requested collateral evidence regarding these leases, such as lease applications or rent checks.   Corporate Pines informed the court that it did not keep business records.[37]   In the face of such a representation, the court required that Corporate Pines pay for a search of its bank records for evidence in support of its claim for rent income.   Only after significant court intervention did Corporate Pines concede that there was no tenant occupying the 6640 building prior to April 6, 2006.   This conduct, as well as the confusing and often contradictory testimony by Bosch, undermines any credibility concerning the legitimacy of Corporate Pines' insurance claims.

---

[37]      At trial, Bosch claimed that he had documents but had simply produced the wrong file to his attorney.   In light of the difficulty obtaining any documents from Defendant, the court finds this statement to be not credible.

19

40.  After hearing the testimony of Alvarado, the court finds that Corporate Pines failed to cooperate with Underwriters as required by the Policy.  Corporate Pines failed to submit a notice of loss detailing interior damage to 6620, 6630 and 6640 Harwin and only mentioned the losses as a means to leverage its demand for immediate payment on its claim for replacement of the air conditioning units.  Corporate Pines failed to reveal the actual dates of the interior vandalism in support of its claim and failed to support its claim with any evidence of vandalism at any of its buildings.  Corporate Pines also failed to file police reports for the interior vandalism, a requirement under the Policy.  This conduct prevented Underwriters from investigating the alleged losses.

41.  The 6640 building was vacant at the time of the vandalism of the air conditioning units and theft of the copper coils.  Under the Policy, if a building is vacant for sixty or more days before a loss, Underwriters was not obligated to pay for vandalism, building glass breakage, water damage, theft, or attempted theft.[38]

42.  Underwriters never made an offer to adjust the claim prior to the filing of this suit.  However, the evidence clearly established that Underwriters had a reasonable basis to withhold adjusting the claim until Corporate Pines provided information supporting a bona fide claim under the Policy.

---

[38]    Defendant's Exhibit 1, The Policy, pp. 16-17 (unnumbered).

43.  Underwriters reasonably and necessarily expended $170,000 in attorneys' fees prosecuting its declaratory judgment action and defending against Corporate Pines counterclaims.  The court credits Mr. Tigner's testimony concerning the hours reasonably expended on this case and finds, that, while the hours were more than expected for this type of case, they were necessary and directly attributable to the dilatory conduct of Corporate Pines.  The court's docket reflects numerous hearings and rehearings caused by Corporate Pines' opposition to the most reasonable discovery demand.  Mr. Tigner's hourly rate of $280 is reasonable in light of his experience and the rates generally charged in the Houston, Texas, area.

44.  The initial burden is placed on the insured to demonstrate that the claim is covered under the policy.  _Federated Mut. Ins. Co. v. Grapevine Excavation, Inc._, 197 F.3d 720, 723 (5th Cir. 1999)(applying Texas law and discussing the burdens in the context of an insurer's duty to defend); _Evergreen Nat'l Indem. Co. v. Tan It All, Inc._, 111 S.W.3d 669, 675 (Tex. App.—Austin 2003, no pet.).

45.  If so demonstrated, the burden shifts to the insurer to prove the application of an exclusionary provision.  _Grapevine Excavation, Inc._, 197 F.3d at 723; _Telepak v. United Servs. Auto. Ass'n_, 887 S.W.2d 506, 507 (Tex. App. - San Antonio 1994); _see also_ Tex. Ins. Code Ann. § 554.002 (stating that insurer has burden of

proof to any avoidance or affirmative defense).  The final burden rests on the insured to show that the claim falls within an exception to the exclusion.  Grapevine Excavation, Inc., 197 F.3d at 723.  The insured as the burden of proof of segregating the damage attributable solely to a covered event.  Wallis v. United Servs. Auto. Ass'n, 2 S.W.3d 300, 302 (Tex. App. – San Antonio 1999).  46.  The court finds that the damage to the air conditioning units was not covered under the Policy.  Applying the Policy's definition of vandalism to the present case, the court finds that, although the metal casings of the units were willfully and maliciously damaged, the damage was incidental to the theft of the copper wire inside.  Under the Policy, this is not a covered loss because the Policy does not cover theft or damage that was caused by or resulted from theft.  Corporate Pines' claim under the Policy for replacement of the air conditioning units at 6640 Harwin Drive is **DENIED**.

47.  The court has previously excluded any evidence supporting lost income due to Corporate Pines' failure to produce any evidence supporting this claim prior to trial.  However, because the loss of the air conditioning units has been found to be not covered under the Policy, Corporate Pines' lost business income claim fails under the Policy, even if the court had allowed such evidence to be

presented.[39]

48.  The court also finds that the Policy would not cover building damage to 6640 Harwin caused by the breaking in or exiting of burglars.  In the present case, burglars broke a glass window to gain access to the interior of 6640 Harwin and broke an interior door to gain access to the roof of 6640 Harwin.  However, that damage was less than the Policy's $5,000 deductible.  Also, the Policy did not cover building glass breakage if the building was vacant.  Accordingly, Corporate Pines' claim for repairs for damage resulting from burglars entering or exiting the building is **DENIED.**

49.  Corporate Pines' claims for interior vandalism repairs at 6640 and 6630 Harwin Drive fail for several reasons.  First, and most importantly, there was no credible evidence supporting Corporate Pines' claim that the buildings were vandalized.  Bosch's testimony on this point is particularly not credible.  Although Edwards verified her employer's claim of vandalism, this was not consistent with her complete failure to mention vandalism of either building to Alvarado until Bosch raised the issue nearly three weeks after the alleged events.  Alvarado investigated and found no evidence of damage.  Neither Bosch nor Edwards ever provided a date for the alleged vandalism.  Corporate Pines failed to file a police report concerning vandalism at either location, failed to report

---

[39]     Defendant's Exhibit 1, The Policy, p. 33 (unnumbered)("[T]he loss or damage [business income] must be caused by or result from a Covered Cause of Loss").  Because the damage to the air conditioning units was not a covered loss, the resulting loss of business income is likewise not covered.

the vandalism to its insurance agent, and failed to take any pictures of the alleged vandalism, facts that support the court's conclusion that the vandalism claims were fabricated in an attempt to settle the air conditioning unit claim. The invoices submitted to Underwriters for the vandalism losses at both locations appear to be for routine maintenance items and not the intentional destruction of property. Accordingly, the court **DENIES** Corporate Pines demand for recovery for interior vandalism for 6630 ro 6640 Harwin under the Policy because there is inadequate proof of an actual loss due to vandalism.

50.  Additionally, 6640 Harwin was unoccupied at the time of the vandalism. The Policy excluded coverage for vandalism damage if the building had been vacant for sixty or more days. Corporate Pines' failure to provide leasing information to Underwriters concerning its vandalism claim after repeated requests violated its duties under the Policy and entitles Underwriters to an adverse inference that there was no tenant occupying the property in the sixty days prior to the vandalism. This provides an alternative ground to deny Corporate Pines' claims on the 6640 Harwin building.

51.  If an insured engages in fraud in the making of a claim, its entire claim may be barred under the policy provisions so providing. <u>Texas Farmers Ins. Co. v. Murphy</u>, 996 S.W.2d 873 (Tex. 1999); <u>Howard v. State Farm Lloyds</u>, H-04-352, 2005 WL 2600442 at *8 (S.D. Tex. October 13, 2005)(unpublished). Corporate Pines'

conduct in pursuing a lost rent income claim when it had no tenant is fraud and bars its entire claim. Corporate Pines also misrepresented the facts surrounding the events of the theft of copper coils from the air conditioning units at 6640 Harwin Drive and the facts related to its interior vandalism claims at 6640 and 6630 Harwin Drive.

52. In sum, the court finds that Underwriters does not owe Corporate Pines indemnity for any loss under the Policy.

53. The court next turns to Corporate Pines' counterclaims for bad faith. Under Texas law, an insurer owes its insured a duty to deal fairly and in good faith in processing claims. Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 459 (5th Cir. 1997)(applying Texas law). The Texas Insurance Code specifically requires an insurer "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." Tex. Ins. Code § 541.060(a)(2)(A).

54. Whether raised pursuant to common law or the Texas Insurance Code, the insurer's duty of good faith is the same. See Higginbotham, 103 F.3d at 460. The insurer breaches this duty in denying a claim if the insurer knew or should have known that it had no reasonable basis for denying coverage. See United States Fire Ins. Co. v. Williams, 955 S.W.2d 267, 268 (Tex. 1997); Aetna Cas. & Sur. Co. v. Garza, 906 S.W.2d 543, 546 (Tex. App.–San

Antonio 1995).

55.   The court has found that Corporate Pines did not have a
claim covered under the Policy.   Accordingly, Corporate Pines does
not have a bad faith cause of action under common law or the Texas
Insurance Code.   Progressive County Mut. Ins. Co. v. Boyd, 117
S.W.3d 919 (Tex. 2005).

56.   In a declaratory judgment action, a court may award
attorneys' fees "as are equitable and just."   Tex. Civ. Prac. &
Rem. Code, § 37.009.   In the present case, the court awards
Underwriters the entire amount sought, $170,000, for several
reasons.   First, Underwriters is the prevailing party.   It had to
defend against meritless insurance claims, meritless bad faith
claims, and meritless obstructions to the discovery process.   The
court has previously determined, on January 16, 2008, and September
25, 2008, that Corporate Pines should be sanctioned for its
discovery abuses but withheld determining a specific amount of
attorneys' fees owing.   After hearing the evidence in this case and
after reviewing the court's docket sheet, the court finds it is
only fair that Corporate Pines pay for the totality of
Underwriters' fees as the sum is directly attributable to Corporate
Pines' conduct in pursuing meritless insurance claims.

It is **ADJUDGED** that Underwriters has no duty to indemnify
Corporate Pines for any damage to its property because the Policy's
theft exclusion to the vandalism provision of the Policy precludes

coverage.  It is also **ADJUDGED** that Corporate Pines did not comply with the Policy's coinsurance requirement.  It is **ADJUDGED** that Corporate Pines failed to cooperate with the claim investigation. Accordingly, Plaintiff owes nothing to Defendant under the Policy. It is further **ADJUDGED** that Underwriters be awarded its attorneys' fees in the amount of $170,000 against Corporate Pines.

Finally, it is **ADJUDGED** that Corporate Pines take nothing against Underwriters on its counterclaims.

**SIGNED** this 15th day of December, 2008.

Nancy K. Johnson
United States Magistrate Judge

27